IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION


**ARTHUR CARSON**                                                                     **PLAINTIFF**


**VS.**              **CASE NO. 4:18-cv-00692-BSM**


**ROGER LACY, dba D & B JANITORIAL SERVICES;**              **DEFENDANTS**
**LAIDLAW & LACY, INC.; and**
**CORPORATION-SERVICE CO.**

### DEFENDANTS D&B JANITORIAL SERVICES AND LAIDLAW & LACY, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants D&B Janitorial Services, Inc., erroneously sued as Roger Lacy d/b/a D & B Janitorial Services, and Laidlaw, Inc., erroneously sued as Laidlaw & Lacy, Inc., by their attorneys, Cross, Gunter, Witherspoon & Galchus, P.C., submit their Brief in Support of their Motion to Dismiss Plaintiff Arthur Carson's Complaint.

Respectfully submitted,

Missy McJunkins Duke (#99167)
Abtin Mehdizadegan (#2013136)
**Cross, Gunter Witherspoon & Galchus, P.C.**
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
Phone: 501-371-9999 / Fax: 501-371-0035
E-mail: mduke@cgwg.com / abtin@cgwg.com

237559

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................TOA i

I. INTRODUCTION.............................................................................................ARG 1

II. FACTUAL BACKGROUND ...........................................................................ARG 2

A.    Background Regarding the Defendants.................................................. ARG 2

B.    Plaintiff's Complaint Allegations .......................................................... ARG 3

C.    Plaintiff's Status as a Serial Litigant of Frivolous Claims and Misrepresentations About his Actual Criminal History ........................................................ ARG 6

III. ARGUMENT..................................................................................................ARG 9

A.    The Complaint Should be Dismissed Under Rules 12(b)(4) and (b)(5) Because, Due to Defective Service and Insufficient Service of Process, the Court Lacks Jurisdiction Over the Moving Defendants........................................... ARG 10

B.    The Complaint Must Be Dismissed Pursuant to Rule 12(b)(6) and Pursuant to 28 U.S.C. § 1915 Because Plaintiff's Failed to State a Claim Upon Which Relief Can Be Granted and Because his Claims are Frivolous. ............................... ARG 13

      1.    Plaintiff Failed to Plead Sufficient Facts to Assert that Defendants are "Employers" under Title VII and the ACRA...............................ARG 15

      2.    Plaintiff Failed to Exhaust his Administrative Remedies with Respect to his Title VII Claim. ..................................................................ARG 16

      3.    To the Extent that Plaintiff's Complaint Makes any Individual Capacity Claims Under Title VII or the ACRA Against Mr. Lacy, Such Claims Must be Dismissed Pursuant to Rule 12(b)(6)............................ARG 16

      4.    Plaintiff's Title VII and ACRA Claims Substantively Fail to State a Claim Upon Which Relief Can Be Granted Under any Theory of Liability....................ARG 17

      5.    Plaintiff's Disparate Impact Claim Under the ACRA for Unintentional Race Discrimination Fails as a Matter of Law....................................ARG 22

      6.    The Relief Requested in Plaintiff's Complaint is Unavailable Under Title VII and the ACRA..................................................................ARG 23

C.    Any FCRA Claim Alleged Against These Defendants Must Be Dismissed Pursuant to Rule 12(b)(1) for Lack of Article III Standing and Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted. ...................... ARG 25

      1.    Plaintiff Lacks Standing Because He Suffered No Concrete Injury............ARG 25

      2.    Plaintiff Failed to State a Viable Claim Upon Which Relief Could Be Granted for any Alleged FCRA Violation..................................................ARG 28

IV. CONCLUSION ..............................................................................................ARG 31

CERTIFICATE OF SERVICE .................................................................... COS 1

237559

# TABLE OF AUTHORITIES

**CASES**

## U.S. Supreme Court

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................. 12, 21

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999) ................................... 20

*Connecticut v. Teal*, 457 U.S. 440 (1982) .............................................................. 18

*Denton v. Hernandez,* 504 U.S. 25 (1992) .............................................................. 13

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................................................................ 12

*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999) ................................................ 21

*Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................................................. 22

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) ............ 11

*Neitzke v. Williams,* 490 U.S. 319 (1989) .............................................................. 13

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ............................................................... 23

*Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) ......................................... 15

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ................................................. 23, 26

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ............. 21

*Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988) ...................................... 17

## U.S. Court of Appeals

*Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852 (8th Cir. 1996) .......... 11

*Adams v. Allied Signal General Aviation Avionics*, 74 F.3d 882 (8th Cir. 1996) .......... 9

*Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776 (9th Cir. 2018) ........................... 25

*Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894 (8th Cir. 2006) ...... 22

*Carson v. Polley*, 689 F.2d 562 (5th Cir. 1982) ....................................................... 7

*Dreher v. Exeprian Info. Solutions, Inc.*, 856 F.3d 337 (4th Cir. 2017) ...................... 25

237559

*Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166 (9th Cir. 2018) ..................................... 25

*Foster v. Wyrick*, 823 F.2d 218 (8th Cir. 1987) ............................................................................ 21

*Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 740 (2018) ........................................................................................................................................ 25

*Langlie v. Onan Corp.,* 192 F.3d 1137 (8th Cir.1999), *cert. denied,* 529 U.S. 1087 (2000)........ 17

*Levy v. Ohl*, 477 F.3d 988 (8th Cir. 2007) .................................................................................... 13

*Marshall v. Warwick*, 155 F.3d 1027 (8th Cir.1998)........................................................................ 9

*Mattes v. ABC Plastics, Inc.*, 323 F.3d 695 (8th Cir. 2003) .......................................................... 13

*Miller v. Redwood Toxicology Lab. Inc.*, 688 F.3d 928 (8th Cir. 2012)............................................ 2

*Osborn v. United States*, 918 F.2d 724 (8th Cir. 1990) ................................................................ 23

*Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115 (8th Cir. 2011) .............................. 2

*Park v. Forest Serv. of the United States*, 205 F.3d 1034 (8th Cir. 2000)..................................... 22

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847 (8th Cir. 2012)............................................... 14

*Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025 (8th Cir. 2013) ................................................... 22

*Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899 (8th Cir. 2015) ..................................... 15

*Titus v. Sullivan*, 4 F.3d 590 (8th Cir. 1993)................................................................................. 23

*Waters v. Ricketts*, 48 F. Supp. 3d 1271 (D. Neb. 2015), *aff'd,* 798 F.3d 682 (8th Cir. 2015)..... 22

## U.S. District Court

*Bell v. United States Dep't of Agric.*, 2015 WL 6758151 (E.D. Ark. Nov. 5, 2015) .................... 9

*Carson v. Quarterman*, 2009 WL 1683401 (N.D. Tex. June 15, 2009) ......................................... 8

*Carson v. TDCJ-ID*, 1998 WL 906989 (N.D. Tex. Dec. 17, 1998)................................................. 6

*Cavaliere v. Advert. Specialty Inst. Inc.*, 853 F. Supp. 2d 472 (E.D. Pa. 2012) ......................... 20

*Clark v. Northland Grp., Inc.*, 2014 WL 3828218 (D. Minn. Aug. 4, 2014) ............................... 12

*Edwards v. Gene Salter Properties*, 2017 WL 6045430 (E.D. Ark. Dec. 6, 2017)...................... 11

*Fletcher v. Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP*, 537 F. Supp. 2d 1028 (W.D. Mo. 2008)................................................................................................................................... 19

237559

*Frost v. McDonald*, 2009 WL 3634095 (E.D. Ark. Nov. 2, 2009)................................. 17

*Kushmeder v. McHugh*, 2010 WL 1978805 (M.D. Pa. May 14, 2010)........................ 18

*Lewis v. Kennemore*, 2017 WL 5755142 (W.D. Ark. Nov. 28, 2017) .......................... 2

*Manley v. Nat'l ProSource, Inc.*, 2013 WL 3480385 (S.D. Tex. July 10, 2013), *aff'd sub nom. Manley v. Invesco*, 555 F. App'x 344 (5th Cir. 2014)............................................. 16

*McCoy v. Canterbury*, 2010 WL 5343298 (S.D.W. Va. Dec. 20, 2010), *aff'd*, 428 F. App'x 247 (4th Cir. 2011)............................................................................................. 18

*McDaniel v. IntegraCare Holdings, Inc.*, 901 F. Supp. 2d 863 (N.D. Tex. 2012) ...................... 20

*Mestas v. Town of Evansville*, N2017 WL 6551293 (D. Wyo. Nov. 21, 2017) ......................... 20

*Mitchell v. Potter*, 2007 WL 1067631 (W.D. Ark. Apr. 9, 2007) ................................ 11

*Moore v. Hernandez*, 2018 WL 3352999 (N.D. Tex. June 4, 2018), *report and recommendation adopted,* 2018 WL 3348883 (N.D. Tex. July 9, 2018) .............................. 8

*Moss v. Texarkana Arkansas Sch. Dist.*, 240 F. Supp. 3d 966 (W.D. Ark. 2017)...................... 15

*Polk v. KV Pharm. Co.*, 2011 WL 6257466 (E.D. Mo. Dec. 15, 2011)........................................ 4

*Vaughn v. Wells Fargo Bank, N.A.*, 2017 WL 1498069 (W.D. Ark. Apr. 25, 2017) .................. 12

*Watkins v. Am. Mortg. Assocs., Inc.*, 2010 WL 1417973 (E.D. Ark. Mar. 31, 2010) .................. 9

*White v. Am. Axle & Mfg., Inc.*, 2006 WL 335710 (E.D. Mich. Feb. 14, 2006)......................... 18

*Williams-Raynor v. Arkansas Dep't of Health*, 2017 WL 1017636 (E.D. Ark. Mar. 15, 2017) .. 23

**State Court**

*Shotzman v. Berumen*, 363 Ark. 215, 213 S.W.3d 13 (2005) ....................................... 10

*Wilburn v. Keenan Cos.*, 298 Ark. 461, 768 S.W.2d 531 (1989) ................................ 11

<u>S<small>TATUTES</small></u>

28 U.S.C. § 1915.............................................................................................. 13

42 U.S.C. § 1981a............................................................................................. 21

42 U.S.C. § 423 ................................................................................................ 19

A<small>RK</small>. C<small>ODE</small> A<small>NN</small>. § 16–123–102 ....................................................................... 14

237559

ARK. CODE ANN. § 16–123–105 ................................................................................... 21

ARK. CODE ANN. § 16–123–107 ........................................................................... 21, 22

**RULES**

ARK. R. CIV. P. 4 .......................................................................................................... 10

Fed. R. Civ. P. 8 ........................................................................................................... 12

Fed. R. Civ. P. 12 ................................................................................................. *passim*

## TREATISES

*Charles A. Wright & Arthur R. Miller, Motions to Dismiss—Insufficiency of Process and Service of Process*, 5B Fed. Prac. & Proc. Civ. § 1353 (3d. ed. 2002) ................................................... 9

# I. Introduction

Plaintiff Arthur Carson, a seasoned *pro se* litigant and serial plaintiff, filed his "Complaint for Employment Discrimination" in the Circuit Court of Pulaski County, Arkansas on August 14, 2018, which Defendants D&B Janitorial Services, Inc., erroneously sued as Roger Lacy d/b/a D & B Janitorial Services (D&B), and Laidlaw, Inc., erroneously sued as Laidlaw & Lacy, Inc. (Laidlaw)[1] removed to this Court on September 19, 2018. *ECF No. 1.* Though Plaintiff's Complaint lacks any sufficient detail upon which a plausible claim may proceed against these Defendants, Plaintiff—a convicted felon who, until 2008, was serving a twenty-year prison sentence for attempted murder with a deadly weapon—essentially argues that businesses should not be allowed to consider applicants' criminal justice records in the hiring process because of national incarceration rates of African Americans. While subject matter jurisdiction is disputed, Plaintiff's Complaint references three statutes: Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.* (Title VII), the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16–123–101 *et seq.* (ACRA), and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (FCRA). *ECF No. 3*, at P. 1. Plaintiff's Complaint, however, only appears to assert claims for alleged race discrimination under Title VII and the ACRA under a disparate impact theory.

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendants move for dismissal of Plaintiff's Complaint in its entirety for three independent reasons discussed more fully in Section III of this Brief: (1) defective summons and insufficient process (Rule 12(b)(4) & (b)(5)); (2) failure to state a claim upon which relief can be granted and because the Complaint, filed by a serial litigator on an *in forma pauperis* basis, is frivolous (Rule 12(b)(6)

---

[1] D&B and Laidlaw are collectively referred to as "Defendants" throughout this Brief.

and 28 U.S.C. § 1915); and (3) lack of subject matter jurisdiction and lack of standing (Rule 12(b)(1)).

## II. FACTUAL BACKGROUND

### A.     Background Regarding the Defendants

D&B is an Arkansas company that provides commercial janitorial services for, among others, governmental and/or highly regulated clients that, as a result of its clients' security requirements, prohibit D&B from placing any custodial employee with certain felony convictions in their offices. *See* **Exhibit 1**, Information Pertaining to D&B from the Arkansas Secretary of State's Website;[2] *see ECF No.* 3, at P. 2–3. Roger Lacy is D&B's registered agent. *Id.* at P. 1. There is no corporation by the name of Laidlaw & Lacy, Inc. doing business within the State of Arkansas. Laidlaw, Inc., however, is an Arkansas corporation that offers competing janitorial services. Jim Laidlaw is Laidlaw's registered agent and President. **Exhibit 2**, Information Pertaining to Laidlaw from the Arkansas Secretary of State's Website.

Though D&B and Laidlaw are separate entities with distinct ownership and control, Mr. Laidlaw and Mr. Lacy share an administrative employee, Anita Cotton, who is involved in processing applications for each entity. On occasion, when D&B does not have any available positions for a particular candidate, D&B may refer individuals to seek employment with

---

[2] Defendants submit that the exhibits attached to the Motion are proper for Rule 12(b) consideration and should not be construed as documents beyond the scope of the pleadings that would otherwise convert this Motion into a motion for summary judgment. "In deciding Rule 12(b) motions, courts are not strictly limited to the four corners of complaints." *Lewis v. Kennemore*, 2017 WL 5755142, at *2 (W.D. Ark. Nov. 28, 2017); *see Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011). "While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public records, orders, items appearing in the records of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931, n.3 (8th Cir. 2012) (citations omitted).

Laidlaw, or vice versa. Importantly, D&B at all times relevant herein only had one client that did not prohibit the Company from placing certain convicted felons in its facility. *See ECF No. 3*, at P. 2–3.

**B.      Plaintiff's Complaint Allegations**

On July 3, 2018, Plaintiff called Ms. Cotton, who he alleged is only a representative of Roger Lacy or D&B, to inquire about a janitorial position, who then directed him to complete a job application for potential employment with D&B. *ECF No. 3*, at P. 2.[3] In line with its contractual arrangements with its clients, D&B's job application contains a question about an applicant's criminal history. *Id.* Plaintiff completed this section of the job application and voluntarily represented that he was convicted of felony assault thirty-two years ago. *Id.* Anita allegedly told Plaintiff, however, that so long as his criminal record did not include any theft-related convictions, he would not be disqualified for consideration for a janitorial position with D&B. *Id.* Importantly, upon completing the job application, Plaintiff signed the following certification:

> I CERTIFY THAT THE FACTS CONTAINED IN THIS APPLICATION ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE, AND UNDERSTAND THAT IF EMPLOYED, FALSIFIED STATEMENTS ON THIS APPLICATION SHALL BE GROUNDS FOR DISMISSAL[.] I AUTHORIZE INVESTIGATION OF ALL STATEMENTS CONTAINED HEREIN, AND THE REFERENCES LISTED ABOVE TO GIVE YOU ANY, AND ALL INFORMATION CONCERNING MY PREVIOUS EMPLOYMENT, AND ANY PERTINENT INFORMATION THEY MAY HAVE, PERSONAL OR OTHERWISE, AND RELEASE ALL PARTIES FROM ALL LIABILITY FOR ANY DAMAGE THAT MAY RESULT FROM FURNISHING SAME TO YOU. I UNDERSTAND, AND AGREE, THAT IF HIRED, MY EMPLOYMENT IS FOR NO DEFINITE PERIOD, AND MAY, REGARDLESS OF THE DATE OF PAYMENT

---

[3] Defendants do not admit any factual averments in Plaintiff's Complaint, but nevertheless incorporate those allegations herein for the limited purpose of presenting their arguments below.

237559

OF MY WAGES AND SALARY, BE TERMINATED AT ANY TIME WITHOUT PRIOR NOTICE. I ALSO UNDERSTAND I MAY BE SUBJECT TO RANDOM DRUG TESTING, AND IF I RECEIVE AN INJURY ON THE JOB THAT REQUIRES A MEDICAL VISIT, A DRUG TEST IS TO BE TAKEN WITHIN 24 HOURS OF THE DATE OF INJURY.

In connection with my application for employment or continued employment at Laidlaw, Inc. or D&B Janitorial Services, Inc. . . ., I understand that a consumer report and/or an investigative consumer report will be ordered that may include information as to my character, general reputation, personal characteristics, mode of living, work habits, performance, and experience, along with reasons for termination of past employment. I understand that in compliance with applicable law and as directed by company policy and consistent with the job described, you may be requesting information from public and private sources about, but not limited to, my: workers' compensation injuries, driving record, court record, education, credentials, credit, and references. If company policy requires, I am willing to submit to drug testing to detect the use of illegal drugs prior to and during employment.

**Exhibit 3**, Plaintiff's Application.[4]

Thereafter, Plaintiff was directed to obtain a criminal history report from the Little Rock Police Department, which he voluntarily provided to D&B on July 5, 2018. *Id.* The report from the Little Rock Police Department made no reference to Plaintiff's alleged felony assault conviction. *Id.* At that time, Anita allegedly informed Plaintiff that he would only be qualified to work in only one of D&B's client's locations, which had no openings at that time, due to his self-reported criminal history. *Id.* at P. 2–3. Anita advised Plaintiff, however, that although D&B did not have any suitable positions, there may have been open positions at other commercial buildings maintained by Laidlaw. *See id.* at P. 2–3.

---

[4] Plaintiff's Complaint references his application form. Accordingly, the application is "embraced by the pleadings," *Polk v. KV Pharm. Co.*, 2011 WL 6257466, at *2 (E.D. Mo. Dec. 15, 2011), and it should not be construed as a basis for converting this Motion into a motion under Rule 12(d) of the Federal Rules of Civil Procedure. This is particularly true because the application form is submitted in support of Defendants' Rule 12(b)(1) argument for lack of subject matter jurisdiction.

237559

On July 6, 2018, Plaintiff called Anita again and asked as to why he could not work at another location for D&B, but alleged that their conversation only lasted 34 seconds. *Id.* On July 12, 2018, Plaintiff allegedly learned that D&B—on July 5—also requested a background check relating to his criminal history from Separate Defendant First Advantage Company (FAC).[5] Plaintiff allegedly learned that FAC conducted its criminal background check when he received FAC's "adverse letter." *Id.* at P. 2, 4. It is unclear what information, if any, pertaining to Plaintiff's criminal justice history was disclosed in the background report because the Complaint is silent as to the relevance of the report. What is clear, however, is that that the background report process was not even initiated until July 5, 2018—two days after Plaintiff voluntarily disclosed that he was convicted of felony assault—and that it was only performed upon Plaintiff's express consent. *See* Exhibit 3 (Plaintiff's Application).

Under the heading of "Discriminatory Effects Liability," Page 3 of Plaintiff's Complaint recounts various statistics regarding the rates of incarceration within the United States and within Arkansas, and asserts that D&B's "total ban on [e]mploying [p]rior felons or permitting a fair opportunity to [w]ork at '[o]ther [b]uildings' . . ., has a more harmful effect for [Plaintiff] as an African-American [m]ale, who have [sic] automatically or categorically been excluded from everything [e]xcept [f]elony convictions[.]" *Id.* at P. 3. On Page 4, under the heading of "Disproportionality," Plaintiff alleged that all three named Defendants failed to consider "any mitigating factors of rehabilitation, and such policy [h]as an unjustified [d]iscriminatory adverse effect on African-American [m]ales as Carson, [s]eeking employment and whom [sic] are

---

[5] Plaintiff also alleged in his Complaint that FAC provided inaccurate information relating to an alleged alias, "Arthur Ray [Carson]," but it is not clear how this information is relevant. *ECF No. 3*, at P. 2. Plaintiff contacted FAC on July 14 and 20, 2018, to complain about the alleged incorrect association with "Arthur Ray" as his alias. *Id.* at P. 4. Apparently, FAC did not take any action as a result of Plaintiff's complaints. *Id.*

237559

disproportionately [r]epresented in the Criminal Justice System[.]" *Id.* at P. 4–5. Ultimately, Plaintiff alleged that D&B, FAC, and inexplicably Laidlaw, "in concerted action with . . . Laidlaw's [b]iased overzealous process [h]ad a disparate impact to [sic] [Plaintiff], . . . which substantially [a]ffected [h]is ability to obtain '[f]air [c]onsideration' at [e]mployment, are [sic] the proximate [c]ause of [his] injuries." *Id.* at P. 4. The Complaint does not identify what injury or injuries Plaintiff believes to have suffered, but he nevertheless demands compensatory damages in the amount of $50,000.00 from each Defendant, an unspecified amount of punitive damages, and unspecified declaratory and injunctive relief. *Id.* at P. 5.

**C.**     **Plaintiff's Status as a Serial Litigant of Frivolous Claims and Misrepresentations About his Actual Criminal History**

      From 1989 through the present, Plaintiff initiated at least 43 different lawsuits as a *pro se* litigant in the Texas and Arkansas federal courts, and—in at least 19 of those cases—lodged appeals with the U.S. Court of Appeals for the Fifth Circuit, to wit:

| Jurisdiction | Case Name & Number |
|---|---|
| U.S. District Court for the Eastern District of Arkansas | *Carson v. Thompson*, 4:11-CV-733 (DPM) |
| | *Carson v. Sumlin*, 4:15-CV-193 (BSM) |
| | *Carson v. Tune*, 4:17-CV-432 (BSM) |
| | *Carson v. LL University LLC*, 4:18-CV-275 (SWW) |
| U.S. District Court for the Western District of Texas | *Carson v. TDCJ Commissioners*, CA-94-A-205 |
| U.S. District Court for the Eastern District of Texas | *Carson v. Pustka*, 6:79-CV-356 |
| | *Carson v. Aguilera*, 6:90-CV-527 |
| | *Carson v. Pustka*, 6:91-CV-175 |
| | *Carson v. Waldron*, 6:91-CV-87 |
| | *Carson v. Waldron*, 6:91-CV-424 |
| | *Carson v. Collins*, 6:91-CV-66 |
| | *Carson v. Perry*, 6:91-CV-380 |
| | *Carson v. Estelle Jr.*, 6:91-CV-417 |
| | *Carson v. Perry*, 6:92-CV-506 |
| | *Carson v. Kent*, 6:92-CV-752 |
| | *Carson v. Director TDCJ-ID*, 1:93-CV-378 |
| | *Carson v. Morin*, 1:93-CV-386 |

| | |
|---|---|
| | *Carson v. Denby*, 1:93-CV-470 |
| | *Carson v. Ham*, 6:94-CV-764 |
| | *Carson v. West*, 1:94-CV-713 |
| | *Carson v. West*, 1:95-CV-449 |
| | *Carson v. Scott*, 1:95-CV-1056 |
| | *Carson v. TDCJ*, 5:96-CV-215 |
| | *Carson v. Serrano*, 5:96-CV-279 |
| | *Carson v. Johnson*, 6:06-CV-559 |
| | *Carson v. Buchanan*, 6:06-MC-42 |
| | *Carson v. Quarterman*, 6:08-CV-512 |
| **U.S. District Court for the Northern District of Texas** | *Carson v. TDCJ-ID*, 2:98-CV-397 |
| | *Carson v. Bowles*, 3:89-CV-1796 |
| | *Carson v. Bowles*, 3:89-CV-2116 |
| | *Carson v. Collins*, 1:90-CV-102 |
| | *Carson v. Peterson*, 3:90-CV-1363 |
| | *Carson v. Director TDCJ*, 3:93-CV-2163 |
| | *Carson v. Quarterman*, 3:06-CV-252(B) |
| | *Carson v. Quarterman*, 3:06-CV-2123(G) |
| | *Carson v. Quarterman*, 3:08-CV-99(K) |
| | *Carson v. Arnette*, 3:11-CV-139(B) |
| | *Carson v. Hernandez*, 3:16-CV-3192(G) |
| | *Carson v. Hernandez*, 3:17-CV-1493(L) |
| **U.S. District Court for the Southern District of Texas** | *Carson v. Aguilera*, 4:92-CV-230 |
| | *Carson v. Collins*, 4:92-CV-1041 |
| **U.S. Court of Appeals for the Fifth Circuit** | *Carson v. TDCJ Commissioners*, CA 95-50039 |
| | *Carson v. Bowles*, CA 95-10115 |
| | *In Re Carson*, CA 95-138 |
| | *Carson v. Perry*, CA 95-40551 |
| | *Carson v. Ham*, CA 95-41034 |
| | *Carson v. Norris*, CA 96-20083 |
| | *In Re Carson*, CA 96-89 |
| | *Carson v. Director, TDCJ-ID*, CA 96-40962 |
| | *Carson v. Johnson*, CA 96-41003 |
| | *Carson v. Johnson*, CA 97-40479 |
| | *Carson v. West*, CA 97-40638 |
| | *Carson v. Johnson*, CA 97-40986 |
| | *In Re Carson*, CA 98-11488 |
| | *In Re Carson*, CA 00-11413 |
| | *Carson v. Quarterman*, CA 07-10272 |
| | *Carson v. Quarterman*, CA 07-10297 |
| | *Carson v. Quarterman*, CA 07-10563 |
| | *Carson v. Johnson*, CA 07-40659 |

237559

| *Carson v. Quarterman*, CA 09-40990 |
|---|

In each lawsuit, Plaintiff sought leave to proceed *in forma pauperis.* Upon information and belief, however—due to the frivolity of his claims and abuse of the *in forma pauperis* statute— Plaintiff was "barred from proceeding as a pauper in any further civil suit[.]" *Carson v. TDCJ-ID*, 1998 WL 906989, at *1 (N.D. Tex. Dec. 17, 1998) (discussing PLRA's three-strike rule and the fact that, at that point, Plaintiff had filed twenty-one civil rights lawsuits). More recently, on April 17, 2015, Chief Judge Miller denied Plaintiff's motion to proceed *in forma pauperis* because his financial affidavit demonstrated his ability to pay the filing fee. *Carson v. Sumlin*, 4:15-CV-193 (BSM), at ECF No. 9 (E.D. Ark. April 17, 2015). Plaintiff's compensation— approximately $750.00 per month for Social Security Disability Insurance—has not substantially changed from 2015 to the present. *See* **Exhibit 4**, Plaintiff's Affidavit in Support of Request to Proceed *In Forma Pauperis.* Prior to removal, however, Plaintiff's current *in forma pauperis* application was granted by the Circuit Court of Pulaski County, Arkansas.

With respect to Plaintiff's serial litigation, his lawsuits between 1989 and 2008 generally involved claims of alleged mistreatment while he was in the custody of the Texas Department of Criminal Justice.[6] Plaintiff represented to Defendants on his job application form, and now to this Court, that he was only convicted of assault, and that his conviction was thirty-two years old. *Id.* at P. 2. Plaintiff asserted that these representations were "true and correct to the [b]est of [his] knowledge **under the penalties of [p]erjury**[.]" *Id.* at P. 5 (emphasis added).

---

[6] Plaintiff's post-release litigation in Arkansas, with the exception of one matter that appeared to involve a dispute among heirs of a decedent's estate, has generally involved claims that various residential leasing companies and an automobile dealership's consideration of his criminal justice record had a discriminatory disparate impact on African Americans—similar to the claims asserted in the instant matter against Defendants.

ARG 8

237559

Plaintiff has perjured himself. First, Plaintiff expressly consented to Defendants' alleged procurement of the background report. *C.f.* Exhibit 3, at ¶ 2(e), *with* ECF No. 3, at P. 2, 4. Moreover, information available in the public record makes clear that Plaintiff's actual criminal history is much more significant than merely a thirty-two-year-old conviction for felony assault. In actuality, Plaintiff was found guilty of **<u>attempted murder with a deadly weapon</u>** (a second degree felony) by a Texas jury and was sentenced to twenty years in the Texas Department of Criminal Justice on July 6, 1989. *Carson v. Quarterman*, 3:06-CV-252(B), at ECF No. 13 (N.D. Tex. 2006), a courtesy copy of which is attached to the Motion as **<u>Exhibit 5</u>**.[7] More recently, in his Complaints in *Carson v. Hernandez*, Case No. 3:17-CV-1493, at ECF No. 3 (N.D. Tex. June 6, 2017) and *Carson v. Sumlin*, Case No. 4:15-CV-193, at ECF No. 3 (E.D. Ark. April 6, 2015), Plaintiff candidly volunteered that he was convicted of burglary and attempted murder. Courtesy copies of these publically available records are attached to the Motion as **<u>Exhibit 6</u>** (Hernandez) and **<u>Exhibit 7</u>** (Sumlin) for the Court's convenience. Like his Complaint in the instant matter, Plaintiff represented that his statements in those pleadings were true and correct. *Id.*; *see also Moore v. Hernandez*, 2018 WL 3352999, at *2 (N.D. Tex. June 4, 2018) (discussing Plaintiff's burglary convictions); *Carson v. Quarterman*, 2009 WL 1683401, at *1 (N.D. Tex. June 15, 2009) (discussing Plaintiff's conviction of attempted murder). The factual assertions in Plaintiff's Complaint should be viewed in light of the seriousness of Plaintiff's verifiably false representations to this Court.

### III. <u>ARGUMENT</u>

The Court should dismiss Plaintiff's Complaint in its entirety pursuant to Rule 12(b)(4) and (b)(5) of the Federal Rules of Civil Procedure due to defective service and insufficient

---

[7] Plaintiff also appears to have been convicted of aggravated assault on police officers in February 1978. *Carson v. Polley*, 689 F.2d 562, 568 (5th Cir. 1982).

237559

service of process. In addition, each of Plaintiff's discrimination claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted because he (1) failed to establish that Defendants are "employers" as required by Title VII and the ACRA; (2) failed to exhaust his administrative remedies under Title VII; (3) appears to have asserted a claim against Mr. Lacy in his individual capacity under Title VII and the ACRA, which is unavailable as a matter of law; (4) failed to assert any cognizable adverse employment action giving rise to liability under Title VII and the ACRA; (5) attempted to bring a disparate impact claim under the ACRA, which the Court should hold requires a showing of intentional discrimination; and (6) requested relief in his Complaint that is unavailable under Title VII and the ACRA. Finally, to the extent that Plaintiff's Complaint could possibly be construed as asserting a claim under the FCRA, that claim should be dismissed pursuant to Rule 12(b)(1) because Plaintiff lacks Article III standing sufficient to allow the Court to assert subject matter jurisdiction, and also pursuant to Rule 12(b)(6) because Plaintiff fails to allege any actual violation or injury under the FCRA against these Defendants.

A. **The Complaint Should be Dismissed Under Rules 12(b)(4) and (b)(5) Because, Due to Defective Service and Insufficient Service of Process, the Court Lacks Jurisdiction Over the Moving Defendants.**

Motions for dismissal under Rule 12(b)(4) challenge the content of the summons, and motions under Rule 12(b)(5) concern the proper procedure for serving the summons and complaint, which challenges the mode or lack of delivery of the summons and complaint. *Bell v. United States Dep't of Agric.*, 2015 WL 6758151, at *3 n. 5 (E.D. Ark. Nov. 5, 2015). "The procedural requirements for proper service are set forth in Rule 4 and they are incorporated by Rule 12(b)." *Charles A. Wright & Arthur R. Miller*, *Motions to Dismiss—Insufficiency of Process and Service of Process*, 5B Fed. Prac. & Proc. Civ. § 1353 (3d. ed. 2002) (last updated

April 2018) (Wright & Miller). The distinctions between Rule 12(b)(4) and 12(b)(5) are often

blurred, *see Adams v. Allied Signal General Aviation Avionics*, 74 F.3d 882 (8th Cir. 1996), but it

is nevertheless appropriate to present and analyze defective service issues under both rules.

*Wright & Miller*, at § 1353.

Here, this action was initially filed in the Circuit Court of Pulaski County, Arkansas, and

because Plaintiff attempted service prior to removal, the Arkansas Rules of Civil Procedure

govern the determination of whether process was sufficient. *Watkins v. Am. Mortg. Assocs., Inc.*,

2010 WL 1417973, at *4 (E.D. Ark. Mar. 31, 2010) (citing *Marshall v. Warwick,* 155 F.3d 1027,

1033 (8th Cir.1998)). Rule 4(b) of the Arkansas Rule of Civil Procedure mandates the form and

substance of the summons as follows:

> The summons shall be styled in the name of the court and shall be dated
> and signed by the clerk; be under the seal of the court; contain the names
> of the parties; **be directed to the defendant**; state the **name and address
> of the plaintiff's attorney, if any, otherwise the address of the plaintiff**;
> and the time within which these rules require the defendant to appear, file
> a pleading, and defend and shall notify him that in case of his failure to do
> so, judgment by default may be entered against him for the relief
> demanded in the complaint.

ARK. R. CIV. P. 4(b) (emphasis added). As the Arkansas Supreme Court explained in *Shotzman*

*v. Berumen*:

> Arkansas law is long settled that service of valid process is necessary to
> give a court jurisdiction over a defendant. The law is equally well-settled
> that statutory service requirements, being in derogation of common-law
> rights, must be strictly construed and compliance with them must be exact.
> The same reasoning applies to service requirements imposed by court
> rules. Thus, the technical requirements of a summons set out in Ark. R.
> Civ. P. 4(b) must be also construed **strictly and compliance with those
> requirements must be exact**.

363 Ark. 215, 223, 213 S.W.3d 13, 16 (2005) (citations omitted) (emphasis added).

237559

The Summons issued to Laidlaw & Lacy, Inc. is invalid for multiple independent reasons. *See* **Exhibit 8**, Summons to Laidlaw & Lacy, Inc. First, Laidlaw & Lacy, Inc. is not an actual entity. *See* Exhibit 2. To the extent that Plaintiff intended to name Laidlaw, Inc. as a party to this action, Plaintiff failed to properly identify that entity in his Complaint and in the Summons, and he further failed to identify Laidlaw, Inc.'s registered agent and address for service of process. Moreover, Plaintiff failed to identify his own name and address in the space provided in the Summons form. These are strict and indispensable requirements under Rule 4(b) of the Arkansas Rules, and as such, Plaintiff's attempt to serve any Laidlaw entity was deficient under Rule 12(b)(4). The Complaint should also be dismissed as against D&B because Plaintiff failed to serve Mr. Lacy, D&B's registered agent, with a summons directed to D&B.

Even assuming *arguendo* that the Summons was not materially deficient under Rule 12(b)(4) and that Plaintiff named Laidlaw, Inc. as a defendant in this action, dismissal of the Complaint under Rule 12(b)(5) is still appropriate because the Summons and Complaint were not served on Laidlaw's registered agent—Jim Laidlaw. *See* Ark. R. Civ. P. 4(d)(5) (stating that service of process may be made upon a domestic corporation "by delivering a copy of the summons and complaint to an officer, partner other than a limited partner, managing or general agent, or any agent authorized by appointment or by law to receive service of summons"). As stated above, Mr. Lacy is not the registered agent for Laidlaw, and as such, Plaintiff has not perfected service upon any Laidlaw entity. Thus, because Plaintiff failed to serve D&B with a summons, the Complaint should be dismissed against D&B under Rule 12(b)(5) for the same reasons because, as to each of these Defendants, Plaintiff's failure to comply with his obligations under Rule 4 of the Arkansas Rules of Civil Procedure prevents this Court from exercising jurisdiction over them. *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350

(1999); *see also Wilburn v. Keenan Cos.*, 298 Ark. 461, 463–64, 768 S.W.2d 531 (1989) (the fact

that a defendant has knowledge of a lawsuit does not validate an otherwise defective summons).

Importantly, a *pro se* plaintiff proceeding *in forma pauperis*, like Plaintiff, bears the

responsibility to provide a proper address for service of the summons and complaint. *Edwards v.

Gene Salter Properties*, 2017 WL 6045430, at *5 (E.D. Ark. Dec. 6, 2017). Furthermore, "[t]he

pleadings of *pro se* litigants . . . are not excused from compliance with procedural rules and

Court orders." *Mitchell v. Potter*, 2007 WL 1067631, at *5 (W.D. Ark. Apr. 9, 2007) (citing

*Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852 (8th Cir. 1996)). These

requirements were certainly not foreign to Plaintiff, who—as discussed in Part II—has initiated

over 40 federal lawsuits. Even accounting for Plaintiff's *pro se* status, he failed to meet his

obligations under Rule 4 of the Arkansas (and Federal, as applicable) Rules of Civil Procedure.

Accordingly, his claims against Defendants must be dismissed.

**B.** **The Complaint Must Be Dismissed Pursuant to Rule 12(b)(6) and Pursuant to 28 U.S.C. § 1915 Because Plaintiff's Failed to State a Claim Upon Which Relief Can Be Granted and Because his Claims are Frivolous.**

To survive this Motion to Dismiss under Rule 12(b)(6), the Court must test Plaintiff's

Complaint to determine whether he has satisfied the federal pleading standard. Initially, Rule 8

requires each Complaint to contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The purpose of this requirement is to "give

the defendant[s] fair notice of what the . . . claim is **and** the grounds upon which it rests."

*Vaughn v. Wells Fargo Bank, N.A.*, 2017 WL 1498069, at *2 (W.D. Ark. Apr. 25, 2017) (citing

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (emphasis added). Therefore, while courts accept

*factual* allegations as true at the Motion to Dismiss stage—with only *reasonable* inferences

drawn in Plaintiff's favor—the Complaint, at a minimum, "must contain sufficient factual matter

237559

. . . to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, Rule 8's pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (quotations and citations omitted). Accordingly, the Court should dispense with wholly conclusory allegations or legal conclusions drawn from the facts alleged in Plaintiff's Complaint. *Clark v. Northland Grp., Inc.*, 2014 WL 3828218, at *1 (D. Minn. Aug. 4, 2014) (citations omitted). Although courts typically do not consider matters outside the pleadings at the motion to dismiss stage, *id.* (citing FED. R. CIV. P. 12(d)), the Court may consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, along with matters within the public record. *Id.* (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003) and *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)).

Notwithstanding the fairly lenient treatment of factual allegations at the motion to dismiss stage, because Plaintiff proceeds in this action on an *in forma pauperis* basis, Plaintiff is held to a higher standard under 28 U.S.C. § 1915. *See Denton v. Hernandez*, 504 U.S. 25, 27 (1992). As the Supreme Court has recognized, **"a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."** *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (emphasis added). In order to prevent the occurrence of such suits, Congress has authorized

237559

federal courts to dismiss a claim filed *in forma pauperis* where the courts determine that the action before it is frivolous. 28 U.S.C. § 1915(e)(2)(B). Thus, in addition to dismissal for failure to state a claim under Rule 12(b)(6), the Supreme Court has recognized a separate and independent basis on which meritless *in forma pauperis* complaints may be dismissed under section 1915, to wit:

> [T]he in *forma pauperis statute*, unlike Rule 12(b)(6), accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to **pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.**

*Denton*, 504 U.S. at 32. The *Denton* Court explained that such a finding of factual frivolousness "is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *Id.* at 33. As explained below, Plaintiff's claims against Defendants are subject to dismissal both because the Complaint fails to satisfy Rule 12(b)(6) and because its factual allegations are irrational and frivolous.

**1.      Plaintiff Failed to Plead Sufficient Facts to Assert that Defendants are "Employers" under Title VII and the ACRA.**

As an initial matter, Plaintiff's Title VII and ACRA claims should be dismissed as to each moving Defendant because the Complaint fails to assert a viable basis for jurisdiction under each statute. Specifically, Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen [15] or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). The ACRA, on the other hand, defines "employer" as a "person who employs nine (9) or more employees in the State of Arkansas in each of twenty (20) or more calendar weeks in the current or proceeding calendar year." ARK. CODE ANN. § 16–123–102(5). Nothing in Plaintiff's Complaint establishes, asserts, or even references whether Defendants are

237559

subject to the Court's jurisdiction under these statutes. Consequently, the Complaint fails to state a claim upon which relief can be granted under Title VII or the ACRA, and those claims should therefore be dismissed under Rule 12(b)(6).

**2.      Plaintiff Failed to Exhaust his Administrative Remedies with Respect to his Title VII Claim.**

Even if Plaintiff's Complaint sufficiently pleaded any relevant jurisdictional facts to establish that Defendants are subject to Title VII, his Title VII claim fails on an independent basis: failure to exhaust administrative remedies. Specifically, under Title VII, plaintiffs must exhaust their administrative remedies by filing a Charge of Discrimination with the appropriate governmental entity responsible for enforcing that Act. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012) (per curium) (quoting 42 U.S.C. § 2000e-5(e)(1)). Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the federal government with the first opportunity to investigate, and enables the responsible agency to perform its role of obtaining voluntary compliance and promoting conciliatory efforts. *Patterson v. McLean Credit Union*, 491 U.S. 164,180–81 (1989). Thus, for a claim to be administratively exhausted, an individual must: (1) timely file a charge of discrimination with the appropriate governmental agency that sets forth the facts and nature of the charge; and (2) receive notice of the right to sue. 42 U.S.C. § 2000e-5(b), (c), (e).

Here, Plaintiff never exhausted his administrative remedies, but more to the point, the Complaint is silent as to administrative exhaustion. As such, Plaintiff's Title VII claim must be dismissed on the independent basis of failure to exhaust administrative remedies.

**3.      To the Extent that Plaintiff's Complaint Makes any Individual Capacity Claims Under Title VII or the ACRA Against Mr. Lacy, Such Claims Must be Dismissed Pursuant to Rule 12(b)(6).**

It is unclear whether Plaintiff seeks to assert individual liability claims against any

individuals referenced in the Complaint,[8] but given the vague nature of his rambling and incoherent pleading, Defendants assert that any contention of individual liability under Title VII or the ACRA is improper and requires dismissal with prejudice. Title VII claims are applicable to employers, but not to individuals. *See Moss v. Texarkana Arkansas Sch. Dist.*, 240 F. Supp. 3d 966, 973 (W.D. Ark. 2017) (citing *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 902 (8th Cir. 2015)). The same is true with respect to ACRA claims. *Id.* at 982 (stating that, like Title VII, the ACRA "does not attach liability to individuals"). Because Mr. Lacy is not an employer (nor was he served with a sufficient summons), and because Plaintiff did not administratively exhaust any claim as against Mr. Lacy (nor could he, because such claims are frivolous and unavailable), any individual claim asserted in the Complaint under Title VII or the ACRA must be dismissed with prejudice.

4.    **Plaintiff's Title VII and ACRA Claims Substantively Fail to State a Claim Upon Which Relief Can Be Granted Under any Theory of Liability.**

Title VII bars employers from refusing to refer for employment "any individual because of his race, color, religion, sex, or national origin . . .." 42 U.S.C. § 2000e–2(b). "Individuals with criminal histories do not constitute a protected class under Title VII." *Manley v. Nat'l ProSource, Inc.*, 2013 WL 3480385, at *5 (S.D. Tex. July 10, 2013), *aff'd sub nom. Manley v.*

---

[8] For instance, in the caption of the Complaint, Plaintiff confusingly names "Roger Lacy, dba D & B Janitorial Services" as a Defendant in this action. In Paragraph 2 on the first page of the Complaint, however, Plaintiff appears to abandon any intent to sue Mr. Lacy individually, and simply clarifies that Mr. Lacy is D&B's registered agent. Contradicting this intent, in the first paragraph on Page 2 of the Complaint, Plaintiff appears to assert that Mr. Lacy or D&B were "responsible for hiring." Although it is not clear whether Plaintiff's references to Mr. Lacy were simply an identification of the fact that he is D&B's registered agent for service of process, a fair reading of the Complaint would support that conclusion. Specifically, Plaintiff appears to use the *doing business as* (d/b/a) designation consistently as a means of identifying a party's registered agent. For instance, Corporation Service Co. (CSC) is listed as a defendant in the caption of the Complaint, but the body of the Complaint makes clear that Plaintiff's claims are against FAC and not CSC, which is further supported in the FAC/CSC summons.

237559

*Invesco*, 555 F. App'x 344 (5th Cir. 2014). Thus, Plaintiff cannot base his Title VII claim on his status as a person with a criminal record and, therefore, he has not pleaded a viable legal claim for disparate treatment discrimination. Plaintiff does not allege that Defendants took any adverse action against him, or that he otherwise suffered an adverse employment action because of his race *per se.* Nor does Plaintiff allege that Defendants refused to hire applicants with criminal records only if they were Black and/or male. Instead, he asserts that Defendants have a policy of refusing to consider *all* applicants (without establishing whether Defendants are "employers") who have certain serious criminal records. Thus, any disparate treatment claim in Plaintiff's Complaint must be dismissed.

The Court should additionally dismiss Plaintiff's disparate impact claims under Title VII and the ACRA because the Complaint's threadbare factual statements do not state a plausible claim upon which relief can be granted. Specifically, although Plaintiff has alleged that he is African American and thus a member of a protected class, the Complaint fails to identify a facially-neutral employment practice, demonstrate a disparate impact upon the protected group to which he belongs, or otherwise assert an actionable theory of causation. *See Langlie v. Onan Corp.*, 192 F.3d 1137, 1140 (8th Cir.1999), *cert. denied,* 529 U.S. 1087 (2000) (citations omitted). To allege sufficient facts of causation, a plaintiff must offer statistical evidence of a kind and degree sufficient to raise an inference that the practice in question has caused significant adverse effects on the members of a protected group because of their membership in the group. *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)).

Here, Plaintiff's Complaint fails to identify a facially-neutral employment policy or practice of any particular named Defendant. Even construing the Complaint's allegations liberally, ignoring Plaintiff's abuse of the *in forma pauperis* statute, and assuming that Plaintiff

237559

met his burden of identifying a policy or practice that had a disparate impact on African Americans, the contradictory assertions in his Complaint are self-defeating. Specifically, although Plaintiff alleged that "Defendant's[9] total ban on [e]mploying [p]rior felons or permitting a fair opportunity to [w]ork at "[o]ther [b]uildings" . . . has a more harmful effect for Carson as an African American male," *ECF No. 3*, at P. 3, Plaintiff admits that D&B does not have a wholesale ban on employing felons, as he was informed that certain felony convictions would not categorically exclude him from consideration for employment purposes. *Id.* at P. 2. Moreover, Plaintiff failed to sufficiently plead any facts to demonstrate a causal connection between the alleged disparate impact upon African Americans as a result of D&B's alleged case-by-case consideration of an applicant's prior felony history. In this respect, Plaintiff's proffered statistics related to the rate of incarceration in Arkansas from 2007 (*see id.* at P. 3) do not demonstrate causation. *Frost v. McDonald*, 2009 WL 3634095, at *7 (E.D. Ark. Nov. 2, 2009); *McCoy v. Canterbury*, 2010 WL 5343298, at *5–6 (S.D.W. Va. Dec. 20, 2010), *aff'd,* 428 F. App'x 247 (4th Cir. 2011) (dismissing disparate impact claim where plaintiff failed to offer statistical evidence demonstrating disparate effect and also failed to allege sufficient factual detail of a series of discrete episodes of the contested employment practice in order to raise a plausible inference that it had a discriminatory impact on minorities); *Kushmeder v. McHugh*, 2010 WL 1978805, at *4 (M.D. Pa. May 14, 2010) (dismissing claim that promotion procedures had a disparate impact where plaintiff did not allege any sufficient statistical evidence, or any other evidence, that the policies employed by defendant had an adverse effect on employees in the protected class); *White v. Am. Axle & Mfg., Inc.*, 2006 WL 335710, at *3–4 (E.D. Mich. Feb.

---

[9] Plaintiff's use of the singular possessive form of "Defendant" is confusing, and Defendants are unclear as to whom Plaintiff seeks to reference on Page 3 of his Complaint.

237559

14, 2006) (dismissing disparate impact claim where plaintiff did not identify any employment policy allegedly responsible for the alleged statistical disparities).

Otherwise, Plaintiff offers nothing but his own say-so that D&B's alleged but unidentified policy disproportionately impacts African American applicants. From the facts that he is African American and has a multiple **serious** felony convictions that resulted in at least twenty years of confinement, Plaintiff infers an unfair impact on all African Americans with criminal records. But it goes without saying that a "sample of only one" cannot prove disparate impact. *Connecticut v. Teal*, 457 U.S. 440, 463 n.7 (1982) (citations omitted). The Supreme Court teaches that Plaintiff cannot state a viable disparate impact claim simply by reciting legal labels. Allowing this Complaint to proceed on such meager allegations is a clear violation of *Twombly*'s instruction that "labels and conclusions" do not satisfy Rule 8(a). 550 U.S. at 555. Much like the "naked assertion of conspiracy" in *Twombly*, Plaintiff's *ipse dixit* that D&B's alleged policy has a disparate impact on African American applicants cannot proceed without "some further factual enhancement." 550 U.S. at 557.

While Plaintiff cannot be expected to plead his expert statistical analysis in his Complaint, he can reasonably be expected to consult readily available and, more importantly, relevant crime statistics in attempt to state a plausible claim. Plaintiff failed to do so, however, and instead cited a July 2007 study relating to rates of incarceration in Arkansas. *ECF No. 3*, at P. 3. These statistics are neither relevant nor timely as they do not specifically address felony conviction rates, or more particularly, conviction rates for the myriad offenses for which Plaintiff was convicted, within the relevant labor market during the relevant time period. *See*, *e.g.*, *Fletcher v. Berkowitz Oliver Williams Shaw & Eisenbrandt, LLP*, 537 F. Supp. 2d 1028, 1030

237559

(W.D. Mo. 2008) (rejecting disparate impact claim based on generic arrest statistics where plaintiff offered no evidence that sex offenders like him were more likely to be minorities).

Finally, Plaintiff's Title VII and ACRA claims are simply implausible because he fails to allege that he was qualified for the position that he sought or otherwise suffered any adverse employment action. In fact, by Plaintiff's own admission, he has no other source of income beyond his Social Security Disability Insurance (SSDI) benefits. *Exhibit 4* (Plaintiff's Affidavit in Support of Request to Proceed *In Forma Pauperis*). SSDI benefits are only available to people with disabilities who due, to their conditions, are "unable to do [their] previous work" and "cannot considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In multiple pleadings, Plaintiff has represented that he is:

- "disabled" (Exhibit 6, Hernandez Complaint, at P. 3 and IFP Affidavit with SSID Letter);

- a "poor disabled [s]enior[]" (Exhibit 7, Sumlin Complaint, at P. 3));

- a "63 [y]ear old [d]isabled [s]enior" (**Exhibit 9**, Complaint in *Carson v. Tune*, 4:17-CV-432 (BSM), at ECF No. 2 (E.D. Ark. July 5, 2017));

- "[d]isable[d]" (**Exhibit 10**, Complaint in *Carson v. Arnette*, 3:11-CV-139(B), at ECF No. 1, P. 2 (N.D. Tex. January 25, 2011)); and

- Unemployed due to a SSID-qualifying disability (**Exhibit 11**, IFP Application from *Carson v. Thompson*, 4:11-CV-733 (DPM), at ECF No. 1, P. 1 (E.D. Ark. October 5, 2011)).

Because Plaintiff applied for and received SSID benefits for a total disability, he has represented to the federal government that he is unable to work. As a consequence to his status as an SSID beneficiary, Plaintiff cannot establish that he was qualified for any position sought, and thus, cannot establish an injury sufficient to withstand Rule 12(b)(6) scrutiny. *See Mestas v. Town of Evansville*, 2017 WL 6551293, at *4 (D. Wyo. Nov. 21, 2017) (dismissing Title VII claim where the plaintiff was not able to perform the essential functions of the job and received SSID

237559

benefits); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (recognizing that even under the more permissive ADA standard, "an ADA plaintiff cannot simply ignore [his] SSDI contention that [he] was too disabled to work"). Here, Plaintiff's representations to the Social Security Administration preclude him from now arguing that he was qualified for the janitorial position for which he submitted an application. *See McDaniel v. IntegraCare Holdings, Inc.*, 901 F. Supp. 2d 863, 869 (N.D. Tex. 2012) (employee who received SSDI benefits was judicially estopped from asserting that she was qualified for the position); *see also Cavaliere v. Advert. Specialty Inst. Inc.*, 853 F. Supp. 2d 472, 484 (E.D. Pa. 2012) (statement of discharged employee in support of her application to Social Security Disability Insurance benefits that she was disabled as of date her employer terminated her employment estopped her from claiming in her subsequent employment discrimination action that she was entitled to back pay or front par damages).

Because Plaintiff was not "qualified" for the janitorial position, he can establish no actionable claim under Title VII or the ACRA, and his Complaint fails to even assert that he met the qualifications for that position or that he otherwise suffered an adverse employment action. Without such facts, Plaintiff's Complaint is at best "merely consistent with" liability, and thus "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. For these reasons, Plaintiff also lacks standing to assert a viable claim.

### 5. Plaintiff's Disparate Impact Claim Under the ACRA for Unintentional Race Discrimination Fails as a Matter of Law.

No provision within the ACRA authorizes a plaintiff to proceed against an employer under a disparate impact theory of discrimination. To the contrary, the ACRA's chief concern in the context of employment litigation relates to *intentional* discrimination. *See* ARK. CODE ANN. § 16–123–107(c)(2)(A) (describing the remedies available to "individual[s] who [are] injured by

237559

**intentional discrimination** by an employer"). This reading of the ACRA is particularly compelled because the Arkansas legislature directed courts to "look for guidance . . . [in] state and federal decisions interpreting . . . 42 U.S.C. § 1983[.]" ARK. CODE ANN. § 16–123–105(c). Although cases interpreting 42 U.S.C. § 1983 are not controlling, as that statute is "merely a vehicle for seeking a federal remedy for violations of federally protected rights[,]" *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987), such precedent is—by law—persuasive. In section 1983 actions, a plaintiff must prove an intentional discriminatory purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977). Here, the Complaint peripherally admits that any complained-of action by these Defendants was not intentional. *ECF No. 3*, at P. 5. As a result, Plaintiff's ACRA claim must be dismissed as a matter of law.

**6.    The Relief Requested in Plaintiff's Complaint is Unavailable Under Title VII and the ACRA.**

Even if Plaintiff could state a claim for disparate impact under Title VII or the ACRA (he cannot), the majority of the relief he seeks under this theory—compensatory and punitive damages—is precluded as a matter of law. 42 U.S.C. § 1981a(a)(1); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999) ("The 1991 Act limits compensatory and punitive damages awards . . . to cases of 'intentional discrimination'—that is, cases that do not rely on the 'disparate impact' theory of discrimination."); ARK. CODE ANN. § 16–123–107(c)(2)(A) (limiting recovery of compensatory and punitive damages to only individuals who are injured by intentional discrimination); *see also Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 903 (8th Cir. 2006) (stating that "[f]ederal law imposes a **formidable burden** on plaintiffs who seek punitive damages in employment discrimination cases") and *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1034 (8th Cir. 2013) (observing that the standard for punitive damages under the ACRA is identical to Title VII's standard, which requires malice and reckless indifference,

which require intent). Accordingly, to the extent that Plaintiff's Complaint asserts an entitlement to compensatory and punitive damages under Title VII or the ACRA, such claims should be dismissed as a matter of law.

As to the remaining remedy that Plaintiff seeks, unspecified "[d]eclaratory and [i]njunctive [r]elief[,]" *ECF No. 3*, at P. 5, Plaintiff has failed to satisfy Rule 8(a)(3)'s requirement to include "a demand for the relief sought[.]" FED. R. CIV. P. 8(a)(3). Dismissal (or striking) of this claim for relief is particularly appropriate because a plaintiff in a federal action "must satisfy the threshold requirement imposed by Art[icle] III of the Constitution by alleging an actual case or controversy." *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Where the claim seeks injunctive relief, the plaintiff must establish "that he faces a threat of ongoing or future harm." *Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000). The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies, *Waters v. Ricketts*, 48 F. Supp. 3d 1271, 1278 (D. Neb.), *aff'd*, 798 F.3d 682 (8th Cir. 2015) (citations omitted), and "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Likewise, a plaintiff's speculation that a future injury may occur is not sufficient to warrant injunctive relief. *Id.* at 497. A plaintiff must show that the threat of injury is "real and immediate." *Id.* at 496.

Here, in addition to failing to specify the injunctive and declaratory relief that he apparently seeks, Plaintiff has failed to allege any set of facts sufficient to show that he even has any entitlement to such a remedy. Plaintiff makes no allegations of irreparable harm, inadequacy of legal remedies, or that any alleged threat of injury is real and immediate. As such, his request

237559

for declaratory and injunctive relief should be dismissed or stricken from the Complaint on this basis as well.

**C.    Any FCRA Claim Alleged Against These Defendants Must Be Dismissed Pursuant to Rule 12(b)(1) for Lack of Article III Standing and Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted.**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move for dismissal based upon a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). To prevail on a motion to dismiss for lack of subject matter jurisdiction, the challenging party must successfully attack the Complaint, either on its face or on the factual truthfulness of its averments. *Williams-Raynor v. Arkansas Dep't of Health*, 2017 WL 1017636, at *2 (E.D. Ark. Mar. 15, 2017) (citing *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990)).

**1.    Plaintiff Lacks Standing Because He Suffered No Concrete Injury Under the FCRA.**

The Supreme Court recently held in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) that a plaintiff bears the burden of satisfying the critical elements of standing to establish a case or controversy warranting federal court jurisdiction in accordance with Section 2 of Article III of the U.S. Constitution. As the Court explained:

> Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. . . . Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S., at 560, 112 S. Ct. 2130. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.*, at 560-561, 112 S. Ct. 2130; *Friends of the Earth, Inc.*, 528 U.S., at 180c181, 120 S. Ct. 693. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L.Ed.2d 603 (1990). Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Warth, supra*, at 518, 95 S. Ct. 2197.

237559

. . .

> To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S., at 560, 112 S. Ct. 2130 (internal quotation marks omitted). . . . For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way.

*Id.* at 1547–48. In addition to being "particularized," an "injury in fact must also be 'concrete.'" *Id.* Again, as the Court explained: A "concrete" injury must be "de facto"; that is, it must actually exist. When we have used the adjective "concrete," we have meant to convey the usual meaning of the term – "real," and not "abstract." Concreteness, therefore, is quite different from particularization. *Id.* (internal citations omitted).

Here, as in *Spokeo*, Plaintiff has failed to allege a concrete injury, and at most, the Complaint merely alleges "a bare procedural violation, divorced from any concrete harm." *Id.* at 1549. Because the Complaint fails to offer a single allegation that Plaintiff suffered any concrete harm under the FCRA, and at most simply alleges a mere technical FCRA violation (lack of consent) to support the broader Title VII disparate impact claim, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing. This outcome is particularly compelled in light of the fact that Plaintiff did, in fact, consent to Defendants obtaining a background report regarding, among other things, his criminal history. *Exhibit 3* (Plaintiff's Application Form). Even if Plaintiff did not provide his consent—he did—these bare allegations are specifically the types of violations that the Supreme Court in *Spokeo* described as being insufficient to confer Article III standing. *See e.g. Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) (holding that plaintiff failed to demonstrate actual or substantial risk of harm resulting from alleged violation of FCRA's statutory notice requirements); *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776 (9th Cir. 2018) (holding that alleged violation of the

ARG 26

FCRA's technical redaction requirement, without more, does not result in any concrete harm or create any appreciable risk of harm, and thus fails to satisfy Article III's injury-in-fact requirement); *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 740 (2018) (holding that job applicant lacked standing where the complaint simply alleged that the FCRA form contained extraneous information); *Dreher v. Exeprian Info. Solutions, Inc.*, 856 F.3d 337, 340, 346 (4th Cir. 2017) (stating that a plaintiff "cannot satisfy the threshold requirements of constitutional standing" unless he "allege[s] a concrete injury stemming from allegedly incomplete or incorrect information listed on a credit report," which requires alleging "the type of harm Congress sought to prevent when it enacted the FCRA," for which "nebulous frustration resulting from a statutory violation" does not suffice).

Nothing in the Complaint suggests or could be reasonably inferred to allege that Defendants took any action against Plaintiff as a result of any information purportedly obtained from FAC; whether the background check performed by FAC referenced the fact that Plaintiff was convicted of attempted murder with a deadly weapon, burglary, or assault on a police officer; or whether Plaintiff even believes that Defendants violated the FCRA. Certainly, nothing in the Complaint establishes that Plaintiff suffered any injury in connection with any potential FCRA violation.[10] To the contrary, the only issue that Plaintiff raises in his Complaint relative to the FCRA is that he was allegedly associated with an individual named "Arthur Ray [Carson.]" *ECF No. 3*, at P. 2. Plaintiff does not allege that any reference to that misidentified individual had any impact on his claims, as Plaintiff does not suggest or allege that Defendants failed to hire him as a result of that allegedly erroneous association.

---

[10] It is not even clear whether Plaintiff's purported FCRA claim reach D&B and Laidlaw, as the majority of his Complaint's discussion of any FCRA-related allegations relates to FAC. *Id.* at P. 4.

237559

Ultimately, Plaintiff's FCRA claims must fail because he voluntarily disclosed that he had a conviction on his job application (albeit, with significant omissions) **two days before** D&B and/or Laidlaw allegedly requested a background check from FAC—with his consent—and Plaintiff's disclosure of that information was the reason why Plaintiff was not qualified for any alleged position with D&B and/or Laidlaw. Plaintiff makes no allegation that he suffered any harm—neither from D&B nor from any other Defendant—in connection with any background check performed by FAC. Rather, Plaintiff seems to only reference the FCRA in passing for the purposes of enhancing his unavailing disparate impact theory of employment discrimination. At most, and under the most generous reading of the Complaint, Plaintiff merely asserts "a bare procedural violation, divorced from any concrete harm," *Spokeo*, 136 S.Ct. at 1549, which fails to establish a basis for this Court to assert Article III standing. In the absence of Article III standing, the Court lacks subject matter jurisdiction over Plaintiff's FCRA claim, and the Court should therefore dismiss that claim in its entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## 2. Plaintiff Failed to State a Viable Claim Upon Which Relief Could Be Granted for any Alleged FCRA Violation.

Even if Plaintiff had standing to bring a claim under the FCRA against these Defendants (he does not), the Complaint nevertheless fails to state a claim under that Act. Plaintiff references the FCRA in passing on the first page of his Complaint, but he fails to assert any FCRA violation or any FCRA injury. The Complaint's only tangential reference to any matter that would possibly implicate the FCRA is found in one sentence on Page 2: "On July 5,2018 [sic], without Carson's consent or authorization, the Defendant's conducted [a] second background check with a private [c]ompany[.]" *ECF No. 3*, at P. 2. Plaintiff does not elaborate as to how this statement

implicates the FCRA, and—as made clear in his application form—he consented to the background check.

Importantly, Section 1681a(y) of the FCRA exempts from the definition of "consumer report" any communication that would otherwise be a consumer report under the statute, but that, among other things, was made to an employer "in connection with an investigation of . . . compliance with . . . any preexisting written policies of the employer." 15 U.S.C. § 1681a(y)(1). More specifically, the exemption reads, in relevant part:

> A communication is described in this subsection if—
>
> (A) but for subsection (d)(2)(D) of this section, the communication would be a consumer report;[11]
>
> (B) *the communication is made to an employer in connection with an investigation of —*
> . . .
> (ii) *compliance with Federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer;*
>
> (C) the communication is not made for the purpose of investigating a consumer's credit worthiness, credit standing, or credit capacity; and
>
> (D) the communication is not provided to any person except—
>
> (i) to the employer or an agent of the employer[.]

15 U.S.C. § 1681a(y)(1) (emphasis added). Plaintiff's allegations, together with his job application form, which is necessarily embraced by the pleadings, demonstrate that the background report Defendants obtained relating to his criminal history satisfies the exemption. Specifically, at the time of Plaintiff's application for employment, though the Complaint does not identify any specific policy at issue, Plaintiff generally alleged that Defendants had an

---

[11] Subsection(d)(2)(D) provides that the term "consumer report" does not include communications described in subsection (y). *See* 15 U.S.C. § 1681a(d)(2)(D).

237559

existing policy requiring the performance of background checks on applicants. *ECF No. 3*, at P. 4. Moreover, Plaintiff's Complaint makes clear that the background report was procured and communicated to Defendants for the purposes of compliance with its own alleged policy, which is confirmed by the job application form. Further, the report was not made to investigate Plaintiff's credit, and it was not provided to anyone except Plaintiff and Defendants. Accordingly, the report falls within the section 1681a(y)(1) exemption, which requires dismissal of Plaintiff's FCRA claims.

At least one other district court in this circuit has previously reached the same conclusion—*i.e.*, that the FCRA was inapplicable and the plaintiff's claims failed—under analogous allegations. Specifically, in *Martin v. First Advantage Background Servs. Corp.*, 877 F. Supp. 2d 754 (D. Minn. 2012), the district court considered the clear language of the FCRA and held that "a report received and used in connection with an investigation into the employer's compliance with laws, regulations, or preexisting written internal policies is sufficient to trigger the exemption." *Id.* at 759; *see also Martin v. First Advantage Background Servs. Corp.*, 2014 WL 1260392, at *1 (D. Minn. Mar. 26, 2014) ("FCRA does not apply here because the Report is exempt from FCRA pursuant to 15 U.S.C. § 1681a(y)"). While the district court in *Martin* declined an initial motion to dismiss because additional information was needed about the "circumstances surrounding" the employer's decision to conduct the background screen, *see* 877 F. Supp. 2d at 761, this Court need not delay in granting Defendants' motion. Unlike the unique factual setting in *Martin*, Plaintiff has already provided ample information in his Complaint about the nature of the alleged background check sufficient to establish application of the FCRA's exemption. Plaintiff's Complaint thus fails to state a viable FCRA claim.

237559

The Complaint should separately be dismissed for failure to state a claim because Plaintiff fails to establish an entitlement to any actual or statutory damages. Under the FCRA, statutory damages (rather than actual damages) are only available when a defendant's conduct is willful: "Any person who *willfully fails to comply* with any requirement imposed" is liable for statutory damages of $100 to $1,000. 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Because Plaintiff does not claim any entitlement to actual damages, he was required to plead some form of willful violation of the FCRA. Plaintiff failed to plead any form of willful violation, which is fatal to any potential claim under the FCRA asserted in the Complaint. *See Just v. Target Corp.*, 187 F. Supp. 3d 1064, 1068 (D. Minn. 2016), *appeal dismissed,* No. 16-2708, 2018 WL 2972450 (8th Cir. Feb. 12, 2018). For all these reasons, Plaintiff's FCRA claims should be dismissed.

## IV. CONCLUSION

Plaintiff was sentenced to twenty years' imprisonment after a jury convicted him of attempted murder with a deadly weapon. During his incarceration, Plaintiff litigated a substantial number of frivolous claims that ultimately resulted in a prohibition against proceeding *in forma pauperis*, except under exigent circumstances. He is now frivolously litigating baseless claims against incorrect parties—at no personal expense to himself—because he does not want to be accountable for the societal consequences of attempted murder, assault on law enforcement officers, and burglary. Plaintiff's Complaint also demonstrates that he does not want to be accountable for following the standards of pleading in civil litigation—standards with which he is intimately familiar.

Plaintiff's status as a *pro se* litigant, however, excuses neither ignorance of the law nor failure to comply with the Court's procedural rules. Plaintiff's failure in both respects—as demonstrated by the admitted but unavoidable prolixity of this Brief—has required Defendants,

and now this Court, to expend limited time and judicial resources in analyzing and refuting his spurious and unavailing claims. Whether the Court analyzes the Complaint in the light most favorable to Plaintiff, or more appropriately in light of the fact that he is a serial litigant who has, at least twice, been prohibited from proceeding *in forma pauperis*, the outcome is clear: Plaintiff's Complaint must be dismissed under Rule 12(b)(1), (4), (5), and (6). The only question that remains is whether dismissal should be with or without prejudice. Defendants respectfully suggest that dismissal with prejudice is particularly compelled here given the fantastical impossibility of Plaintiff's claims ever reaching a jury. Likewise, Plaintiff "lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," *Neitzke*, 490 U.S. at 324, and dismissal with prejudice will serve the important policy purpose of deterring such continued conduct by this serial litigant.

Respectfully submitted,

*/s/ Abtin Mehdizadegan*
Missy McJunkins Duke (#99167)
Abtin Mehdizadegan (#2013136)
**CROSS, GUNTER WITHERSPOON & GALCHUS, P.C.**
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
Phone: 501-371-9999 / Fax: 501-371-0035
E-mail: mduke@cgwg.com / abtin@cgwg.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of September, 2018, I served a copy of the foregoing document upon the following in the manner specified below:

| **PLAINTIFF** | **ATTORNEY FOR FIRST ADVANTAGE CO.** |
|---|---|
| Arthur Carson | Jason Spak |
| 10434 W. 36th Street, Apt. 10-B | FisherBroyles, LLP |
| Little Rock, AR 72204 | P.O. Box 5262 |
| ***Via Regular and Certified*** | Pittsburgh, PA 15206 |
| ***U.S. Mail*** | Jason.Spak@fisherbroyles.com |
| | ***Via Email*** |

*/s/ Abtin Mehdizadegan*
Abtin Mehdizadegan

237559